UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

UNITED STATES OF AMERICA,    )   Docket No. CR06-5612FDB
                             )
          Plaintiff,         )   Tacoma, Washington
                             )   October 4, 2006
     vs.                     )
                             )
JENNIFER KOLAR,              )
                             )
          Defendant.         )
                             )
_____  )


TRANSCRIPT OF CHANGE OF PLEA
BEFORE THE HONORABLE FRANKLIN D. BURGESS
SENIOR UNITED STATES DISTRICT JUDGE.


APPEARANCES:

For the Plaintiff:          ANDREW C. FRIEDMAN
                            Assistant United States Attorney
                            700 Stewart Street, Suite 5220
                            Seattle, Washington  98101-1271

For the Defendant:          MICHAEL G. MARTIN
                            Siderius Lonergan & Martin
                            500 Union Street, Suite 847
                            Seattle, Washington  98101-2394


Probation Department:       EDWARD DEL TORO

Court Reporter:             Teri Hendrix
                            Union Station Courthouse, Rm 3100
                            1717 Pacific Avenue
                            Tacoma, Washington  98402
                            (253) 882-3831

Proceedings recorded by mechanical stenography, transcript produced by Reporter on computer.

WEDNESDAY, OCTOBER 4, 2006 - 9:00 A.M.

* * *

THE CLERK: This is in the matter of the United States of America versus Jennifer Kolar, Cause No. CR06-5612FDB.

Counsel, please make an appearance for the record.

MR. FRIEDMAN: Andrew Friedman for the United States.

MR. MARTIN: Good morning, Your Honor. Michael Martin for Ms. Kolar.

THE COURT: Let the record reflect that Ms. Kolar is present. This matter is on this morning for entry of a plea. This plea is pursuant to a signed plea agreement that I am looking at.

Ms. Kolar, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: So let me do this, then. Let me place you under oath as we go through these matters so that your testimony can be sworn to.

If you'd raise your right hand, please.

(Jennifer Kolar, defendant, duly sworn.)

THE COURT: You may be seated. Just keep the mike close to you so that the testimony can be taken down.

All right. Let me start by asking you your age. How old are you?

THE DEFENDANT: I am 33.

THE COURT: How far did you go in school?

THE DEFENDANT: I left just before finishing my Ph.D.

THE COURT: So this plea agreement and the Waiver of Indictment, the Information charging the crimes here, you are able to read those, understand them okay, and you have had a full discussion to your satisfaction with Mr. Martin?

THE DEFENDANT: Yes.

THE COURT: Before you came into the courtroom today, did you consume anything to place you under the influence, any drugs, any alcohol, any medication, anything like that?

THE DEFENDANT: Sir, I do take an antidepressant prescription, a mild dose every morning, so I did have that. I have had that for 10 years, but it has no impact on my ability to proceed.

THE COURT: So you are not under the care of a health provider for anything involving mental health issues, emotional problems, anything like that?

THE DEFENDANT: Other than a normal physician.

THE COURT: All right. The purpose of the questions is whether or not you are confused or have a lack of understanding or anything like that.

You are tracking okay?

THE DEFENDANT: I am completely coherent.

THE COURT: Okay.

Then Mr. Friedman, let me ask you, as to the plea

agreement, the courtesy copy provided to me, anything different in the signed plea agreement?

MR. FRIEDMAN:  Other than changing the date from September to October, Your Honor.

THE COURT:  Then Ms. Kolar, I want to go through the plea agreement with you item by item, and I will tell you what those provisions are saying and see if your understanding is the same.

THE DEFENDANT:  All right.

THE COURT:  If I should get into something that your understanding is different, I expect you will bring it to my attention so we can discuss it.  If necessary, we will take time out so you and Mr. Martin can get together and have a private conference if necessary.

THE DEFENDANT:  All right.

THE COURT:  The main thing here is that it is coming before this Court for resolution by way of this plea agreement.  What you are saying to me in that regard is that this is the way that you want to settle this matter between you and the Government?

THE DEFENDANT:  That's correct.

THE COURT:  I will be doing my best to make sure that you remain in agreement.  So if anything is different, I expect you to call it to my attention.

Will you do that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Then let's look at the plea agreement itself. The type of plea agreement that this is, is an 11(c)(1)(C) type of plea. I am sure that Mr. Martin has told you about what that is, and that will come up later in this document.

No. 1 in this plea agreement talks about the Waiver of Indictment. What that is saying is that you've been advised of your right to have this charge brought against you by way of an Indictment. That is, have the matter and facts presented to a Grand Jury for the Grand Jury to determine whether there's sufficient facts here to warrant a charge against you.

You are saying that you understand that you have that right, but you are going to waive that right and proceed on this Information that I have before me charging these offenses.

I believe there are three counts in this Information. Count 1 is charging conspiracy. They are saying that it began on or about -- began in 1997 and continued up to about May 21, 2001, starting in Olympia, and this conspiracy had to do with arson as set forth in this Information and using destructive devices during crimes of violence, and an unregistered destructive device being involved in this conspiracy.

Is that what you understand the conspiracy to entail?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Then Count 2 is charging attempted arson. That is, on or about October 4, 1998 and that took place at Wray, within the District of Colorado, and that had to do with malicious damage and an attempt to damage by means of fire and explosive material the Wray Gun Club.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you agree with that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The last one in Count 3 is an arson charge, that on or about May 21, 2001 in Seattle, and that was involving malicious damage by means of fire and explosive materials, either yourself or by aiding and abetting, at the Center for Urban Horticulture at the University of Washington. Do you agree with that one?

THE DEFENDANT: Yes, sir.

THE COURT: So those are the charges we are talking about in the Information.

MR. FRIEDMAN: There's also a fourth count in the back of the Information.

THE COURT: I stand corrected. There is a fourth count. That is using a destructive device during a crime of violence. That happened on May 21, 2001. That involved the Center at the University of Washington, that you knowingly used or aided and abetted in the use of that incendiary bomb.

THE DEFENDANT:  Yes, sir.

THE COURT:  So those are the charges we are talking about that you are dealing with in the plea agreement.

Is that your understanding?

THE DEFENDANT:  Yes.

THE COURT:  That is what you are waiving, the right to have this evidence presented to the Grand Jury and for the Grand Jury to determine whether you should be charged with any of these offenses.

What I have now is this Waiver of Indictment which you have signed indicating that you know about those rights and you want to waive those rights and proceed on this Information; that is, the document I just read the charges to you.  Is that correct?

THE DEFENDANT:  That is correct.

THE COURT:  Correct?

THE DEFENDANT:  Yes, sir, that is correct.

THE COURT:  All right.  Then you signed it?

THE DEFENDANT:  Yes, sir.

THE COURT:  So my question to you now, did you sign it of your own free will?

THE DEFENDANT:  Yes, sir.

THE COURT:  Had all the time you needed to discuss this with Mr. Martin?

THE DEFENDANT:  Yes.

THE COURT: You are asking me to accept this waiver and proceed in your case by way of this Information?

THE DEFENDANT: Yes, sir, I am.

THE COURT: Mr. Martin, any reason you can think of why I shouldn't accept the Waiver of Indictment?

THE DEFENDANT: None, Your Honor.

THE COURT: Then the record will reflect that I will accept the Waiver of Indictment and proceed on the Information, make a finding that you signed this waiver knowingly and freely and voluntarily.

With that, we will move to No. 2 in the plea agreement.

That is called the Waiver of Venue. That has to do with Count 2 in that Information, the arson count. The district where this charge should be brought or would be brought if that is where you desired it to be brought would be in Colorado. You are agreeing to waive that venue and have that matter resolved here in this district?

THE DEFENDANT: Yes, sir.

THE COURT: That is what you are agreeing and waiving in this whole process to have that done.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: No. 3 is talking about the charges. That is, you've been advised of the right, even though the matter is coming before the Court by way of this Information, you

still have the right to have the matter tried before a jury.

Again, you are waiving that right and entering a plea of guilty to the charges in that Information.  Those are the four counts that I just mentioned.

THE DEFENDANT:  That's correct, Your Honor.

THE COURT:  You understand you are doing that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  As I have indicated, the first count is the conspiracy count, the second and third count are both arson counts, and the fourth count is using a destructive device in the process.

Now, by entering pleas of guilty here, you are waiving objection to all forms of the charging document.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  As you know, I have placed you under oath and any statement could be used if necessary by the prosecution for perjury or making a false statement.

Do you understand you open yourself up to that?

THE DEFENDANT:  Yes, sir.

THE COURT:  No. 4 is dealing with the elements of the various offenses.

As to the conspiracy count, this is what the Government would have to prove and prove beyond a reasonable doubt for a conviction to stand.

First, they would have to prove that there was an agreement between two or more people here to commit one of these crimes, at least one of them charged in this Information;

No. 2, that you became a member of the conspiracy knowing of at least one of the objects is going to be taking place here and you intended in the process to help accomplish that; and

No. 3, that some member of the conspiracy performed at least one overt act in terms of carrying out the conspiracy.

Do you understand that would be the elements they must prove and do so beyond a reasonable doubt as to Count 1?

THE DEFENDANT: Yes, Your Honor.

THE COURT: As to Counts 2 and 3, the arson counts, they would have to prove:

No. 1, that you used fire, or aided and abetted in using fire, to damage or destroy a building, or attempt to damage or destroy a building;

No. 2, that you acted maliciously; and

No. 3, that the building was used in interstate commerce.

They would have to prove those elements beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 4, using a destructive device. They would have to prove:

No. 1, that you or another person committed the crime of arson;

No. 2, that you knowingly used or aided and abetted that process; and

No. 3, that you or some member of the conspiracy used a destructive device during and in relation to the crime.

Do you understand that they have to satisfy those elements beyond a reasonable doubt?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 5 is dealing with the penalties for these offenses, the statutory penalties.

As to Count 1, you face a sentence of up to five years, a fine of up to $250,000, a period of supervision after you've served the sentence of up to three years, and a $100 penalty assessment.

Is that what you understand the statutory penalties to be for Count 1?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, as to Counts 2 and 3, the statutory penalties are up to 20 years, with a mandatory minimum sentence of five years of imprisonment, a fine of up to $250,000, a period of supervision of up to three years, and a penalty assessment of $100.

You understand those to be the statutory penalties for that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 4, the destructive device, using a destructive device, faces a sentence of up to life, a mandatory minimum sentence of 30 years, a fine of up to $250,000, a period of supervision after you've served a sentence of up to five years, and a $100 penalty assessment as to Count 4.

Is that your understanding as to that count?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Then it goes on to tell you that in addition to the terms of imprisonment for these offenses, the Court could order restitution. If any monetary penalty is ordered by this Court to be imposed is due and payable immediately. You are agreeing, if necessary, to submit a completed financial statement of debtor form. That would give the Court the ability to look into your assets and your ability to meet such an obligation.

Do you understand you are agreeing to that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Then it tells you that supervised release is a period of time following whatever sentence you serve in which you are subject to certain restrictions and requirements of the Probation Department and their rules and regulations. What this is saying to you is if you violate any of those conditions, you run the risk of being returned to prison and

that could result in you serving a total term of imprisonment greater than the statutory maximum that I mentioned.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 6 is speaking to your rights as a Defendant. That would the rights that you normally waive when you plead guilty.

As a defendant, you have a right to enter a plea of not guilty as I have indicated to this Information. Stand on that plea of not guilty. Put the Government to the test of satisfying all the elements to the charges and doing so beyond a reasonable doubt, as you are presumed to be innocent.

You have a right to have this matter tried before a jury. You have a right to have effective assistance of counsel as you go through the trial. The right to confront and cross-examine all witnesses that may be brought against you, as well as compel or subpoena witnesses that may appear on your own behalf.

By being a Defendant, you do not have to testify. If you remain silent, that is not to be used against you.

Should you stand convicted after all that, you still have a right to appeal that conviction to a higher court and have that court examine it to see if things are done correctly at this level.

Normally, with the exception of effective assistance of

counsel, when you plead guilty you waive all of those rights. Is that your understanding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: As to effective assistance of counsel, Mr. Martin is your attorney in this matter. Are you satisfied with him as your attorney?

THE DEFENDANT: Yes, I am.

THE COURT: Anything about his representation or association with you that you call into question for any reason?

THE DEFENDANT: No, Your Honor.

THE COURT: You want him to remain as your attorney until this case is over?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, No. 7 in the plea agreement is talking about things that the Court must consider before sentence is imposed.

That would be the calculation done under the Federal Sentencing Guidelines, as well as factors set forth in 3553 for the Court's consideration. 3553 is saying the Court should take into consideration the nature and circumstances of this offense, the history and characteristics of you as a Defendant, reflect on the seriousness of the offense, provide just punishment for this kind of conduct, to afford adequate deterrence from this criminal conduct, protect the public in

the process, and at the same time provide you as a Defendant with educational, vocational training, medical care, correctional treatment, all the things that would go to rehabilitation, that is to avoid a repeat, if you will of this kind of activity, look at the various sentences available to see which ones would fit this situation, look into the issue of restitution, and all of these things are intended to avoid unwarranted sentencing disparity.

The Court will do all of those things, but there's a timeframe involved as to the Court's consideration, and the Court won't make that determination until sometime around the time of sentencing. That is a delay in the sentencing process.

Is that how you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: After the Court has made those considerations, it tells you that the Court may impose any sentence authorized under the law.

Now, there's one exception in this case as set forth in paragraph 12. We will get to that in terms of the type of plea that it is, but you understand that at least as to that range, that is what the Court is looking at?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Then it tells you that the Court is not bound by any recommendation other than it may be

affected by the type of plea this is.

That is to say that when Mr. Martin makes a recommendation as to what he thinks the sentence should be, the U.S. Attorney, the presentence report that I will be waiting on. That is all they are are recommendations, and they are in no way binding on the Court to accept.

It is up to the Court to make the final decision as to what the sentence would be within the confines of this plea agreement.

Is that also your understanding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It tells you that except as provided in the type of plea this is, you may not withdraw your guilty plea solely because you don't like the sentence you receive.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 8 in the plea agreement says that no one has promised or guaranteed you what sentence this Court will impose.

Is that true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 9 is speaking to restitution. You are saying here and agreeing that you would make restitution to this Wray Gun Club in Colorado, the University of Washington, and any victims that may be determined in this

matter in the arson. That is one that you personally participated in.

This restitution that may be ordered -- I don't know what that is, I don't have any figures here -- but there will be a determination as to what that will be, but whatever restitution is imposed it will be due and payable immediately. Otherwise, a scheduled payment will be set saying what you can do and how you should do that.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, No. 10 is setting forth the statement of facts. That is the facts that you agreed on that would give the Court a basis for accepting a guilty plea, as well as satisfying those elements as to these offenses that I mentioned to you.

I am going to have the U.S. Attorney now recite these facts for the record. I would like you to listen to them so if necessary you can respond to the questions.

MR. FRIEDMAN: Your Honor, before going into the facts, on page 3 I noted that in the elements there's a mistake that I had made. The first element in the crime of using a destructive device during the crime of arson --

THE COURT: Let me have you get to the mike so I can hear you.

MR. FRIEDMAN: The first element in the crime of

using a destructive device during the crime of arson says that defendant or another person committed the crime of arson as charged in Count 2. That should actually say Count 3, because it relates to the arson charged in Count 3.

THE COURT: All right. Mr. Martin, any disagreement with that?

MR. MARTIN: None, Your Honor.

MR. FRIEDMAN: Then, Your Honor, if this case did go to trial, the Government would prove the following facts:

That the Wray Gun Club is a non-profit corporation formed in 1982 for trap shooting and to operate a rifle range located in Wray, Colorado. In 1998, the club had both a building and a mobile home that it used. Members of the club included people who resided in Colorado, Kansas and Nebraska.

The club held an annual turkey shoot. It advertised it. Two people in each of those three states, people came from each of those states and paid a fee to participate in the turkey shoot.

The club also engaged in various other activities that involved multiple states. The bank account paid insurance premiums and purchased targets from out of state.

In 1998, Ms. Kolar and an accomplice decided to take a direct action against the club. They built several timing devices which were designed to ignite fires. The timing devices contained various components, such as clock radios,

light bulbs. They also included plastic containers for gasoline and accelerant-soaked sponges.

On October 4, 1998, Ms. Kolar and her accomplice drove to Wray. They hid containers of fuel near the gun club. They then approached the club carrying the timing devices that they had built. They entered the clubhouse. They plugged the devices into electrical outlets and scattered papers around the clubhouse, pulled wallboard off the wall and poured fuel around the area. That was with two of the devices. They set the third device in the mobile home.

None of the devices actually ignited. They were designed to ignite and start a fire. None did, but the total damage to the building from Ms. Kolar and her accomplices' actions was about $1700.

In May of 2001, three years later, other members of the conspiracy approached Ms. Kolar and asked Ms. Kolar whether she wanted to be involved in another action. Ms. Kolar subsequently met in Olympia with William Rodgers, Briana Waters and others, and they made plans to commit an arson at the University of Washington Center for Urban Horticulture.

The arson was targeted at the office of Professor Toby, who was a professor there, and someone whom Ms. Kolar and others believed was involved in genetic engineering of poplar trees.

On the evening of May 20th, 2001, Ms. Kolar met with

Rodgers, Waters and two others in Seattle. They drove to a spot near the Center for Urban Horticulture. The group left Ms. Waters near the car to serve as a lookout. The others walked to the Center for Urban Horticulture.

When they arrived there, Ms. Kolar used a knife to cut glass in one of the windows to Professor Bradshaw's office. Rodgers and one of the others then entered Professor Bradshaw's office through the cut window and they placed one or more destructive devices, specifically incendiary devices or incendiary bombs, in the office. They also brought fuel into the office and attached it to the destructive devices, and they set the devices to ignite.

Ms. Kolar and the others then left the area. The destructive devices did ignite. The resulting fire destroyed not only Professor Bradshaw's office but the Center for Urban Horticulture.

Professor Bradshaw's research was funded in substantial part by a consortium of lumber companies which hoped that the research would have practical applications in improving the profitability of poplar farming.

The lumber companies that funded Professor Bradshaw's research harvest and sell lumber throughout the United States and abroad. As a result, the Center for Urban Horticulture is a building that is used in interstate commerce and in activity affecting interstate commerce.

THE COURT: All right. Ms. Kolar, you just heard those facts recited by the U.S. Attorney.

Do you agree with those facts you just heard?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also stand by the facts as set forth in your signed plea agreement?

THE DEFENDANT: Yes.

THE COURT: Now, No. 11 in the plea agreement talks about cooperation. In this provision you are agreeing to cooperate legally and truthfully with law enforcement in terms of their investigation and prosecution of criminal activity.

You are agreeing to, in this cooperation but not limited to, give complete and truthful statements, testimony if necessary in terms of a trial that they may have. You are agreeing to do this, and this obligation to cooperate is to continue even after you have entered this plea here, no matter what sentence you receive.

Failure to do that could constitute a breach of the agreement and a petition could be filed to set it aside.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Then it goes on to tell you that the Government will tolerate no deception from you. If the testimony you provide proves to be untruthful, incomplete or whether it helps them or hurts them, that could be considered

a breach and a basis to attempt to set this aside.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In turn, the Government is agreeing here not to prosecute you on any other offenses known to them, except crimes of violence that came out of this investigation, and of course that means they wouldn't use any other information that they have in their possession to bring any charges, nor any information coming out of your cooperation against you in any way other than as the guidelines would allow it to be used in terms of the appropriate sentence.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In exchange for this cooperation and the fulfillment of all the conditions here in this plea agreement, the Government is agreeing here to file what's called a 3553(e) motion and a 5K1 motion, and those are motions that would give the Court the ability to sentence below any mandatory minimum sentence that may be prescribed by statute.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  They go on to say that they will base any consideration here based on the sentencing guidelines.  I think No. 12 kind of defines that as to the import, if you will, of the guidelines in terms of an 11(c)(1)(C) type plea.

You are further agreeing here that any sentencing can be delayed if need be for your continued cooperation. You are saying that's okay, without any objection.

Do you understand you are doing that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 12 is speaking to the sentencing range and the type of plea I mentioned, the 11(c)(1)(C) plea. It is acknowledged here between you and the Government and you're agreeing that, assuming they file the motions under this agreement, the 3553 and the 5K1, you are agreeing here that the appropriate sentence in this matter should be at least 60 months but not more than 84 months, which is five to seven years.

You are agreeing somewhere between those two would be the fair sentence and appropriate sentence in this case.

Is that what you understand you are doing?

THE DEFENDANT: I agree that is what I signed, Your Honor, yes.

THE COURT: If the sentence is rejected by this Court -- and I mentioned about the presentence report and things that could come out for it to have further consideration -- but in any event, if that range is rejected by this Court, this gives you the right then to withdraw from this agreement, start all over again, go to trial and take your chances on whatever the evidence would allow.

THE DEFENDANT: Yes, I understand that, Your Honor.

THE COURT: Aside from that sentencing aspect, the Court retains full discretion to impose a sentence within that range, but any other terms are in the full discretion of the Court in terms of supervised release, fines, forfeitures, restitution, all those things. Those are left over for the Court to decide.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 13 talks about the waiver of appeal. That is that you are saying here that you are aware that you have a right to appeal any sentence imposed here, but knowing that, you are knowingly and voluntarily agreeing to waive that right to appeal the sentence as long as it does not exceed what you've agreed to in terms of what the appropriate sentence should be, that is the 84 months, and you are giving up the right to appeal all aspects of this case as would apply to the sentence.

You are further agreeing to give up any right to bring any collateral attack against the conviction or sentence, except as it may relate to effective assistance of counsel.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 14 talks about additional offenses, and that is there's a case apparently in the District of

Oregon charging you in connection with the July 21, 1997 arson at Cavel West, Inc., in Redmond, Oregon.

What this is saying is upon execution of this plea agreement, that the District of Oregon will take all necessary steps to seek to transfer this case here, and this case would be consolidated and it will all be consumed in what is taking place here in terms of this appropriate sentence.

Is that your understanding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 15 talk about non-prosecution of additional offenses. That is the Government is agreeing here not to prosecute you on any additional offenses known to them at this time based on the evidence that came out of this investigation. They are also saying that in addition to that, the Eastern District of California case, they are agreeing not to prosecute you in connection with an arson incident on October 15, 2001, involving the Bureau of Land Management and the Litchfield Wild Horse and Burro Corrals in Susanville, California. That matter going on down there, they are agreeing to forego prosecution of that.

So in agreeing not to prosecute you on all of these things that are coming in here, they are doing it solely based on the promises made here in this agreement; however, they do intend to provide Probation, in compiling that presentence report, all evidence of relevant conduct committed by you in the

process of all these things taking place.

Do you understand that?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: You are further agreeing and acknowledging the fact that these matters that are being dismissed and are not brought were substantially justified in light of the evidence in the possession of the Government, and they were not vexatious, frivolous or anything done here in bad faith and therefore do not provide you a basis for making any future claim to that extent.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 16 says that you entered into this plea agreement freely and voluntary and that nobody threatened you to get you to enter into this plea agreement.

Is that true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It says that nobody made any promises to get you to enter into this plea agreement, except the promises that have been reduced to this document I am reading from.

Is that also true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No. 17 speaks to the Statute of Limitations. That is to say if this agreement is not accepted by this Court, or there is a breach of any of the terms of

this agreement, you are agreeing here that the Statute of Limitations can be tolled for a period of 30 days from the happening of either one of those events.

What you are saying here is if this matter is set aside, this agreement for any reason, you are giving the Government 30 days from that date to come back and charge you with whatever the evidence would permit, and you are giving them the right to do that if they do that within 30 days without any objection on your part.

Do you understand you are doing that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  No. 18 talks about post-plea conduct. That is to say this agreement applies only to the conduct that occurred prior to the execution of this agreement.

If after this date you should engage in some illegal conduct -- and some examples are given here what that could be; obstruction of justice, failure to appear, criminal conduct of some kind, making false statements to law enforcement, Probation, the Court -- if any of that should happen, you are again giving the Government free hand to come back in, petition the Court and seek additional charges based on that conduct.

You are doing that without objection?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand you are doing that?

THE DEFENDANT: Yes.

THE COURT: The final item, No. 19 in the plea agreement says this is the entire plea agreement between you and the Government in this case.

Upon reflection, do you feel that everything that you've talked about, discussed or been promised to you is all here?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You don't feel anything has been left out?

THE DEFENDANT: No, Your Honor.

THE COURT: You talked about it and discussed it fully with Mr. Martin?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You did all that before you signed it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You signed it of your own free will?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Nobody threatened you, forced you or ordered you to sign something you didn't want to sign?

THE DEFENDANT: No, Your Honor.

THE COURT: You signed it because you want me to accept it and proceed in your case in this fashion; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Martin, any reason you can think of

why I shouldn't accept the plea agreement?

MR. MARTIN: No reason, Your Honor.

THE COURT: Then let the record reflect that I will accept the plea agreement in this matter, make a finding that you have a full understanding of the plea agreement and that you signed it freely and voluntarily.

I will accept it subject to the generation of that presentence report that I mentioned.

So then I will move on to the charges and ask you about them. Count 1 is a conspiracy count beginning around 1997, and continuing to about May 21st of 2001, here in this district. That's the conspiracy as to the conduct that I previously read to you in the Information.

So I will ask you, to that charge, what is your plea; guilty or not guilty?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: As to Count 2, that's the attempted arson that took place on or about October 4, 1998, at Wray, Colorado.

What is your plea to that charge; guilty or not guilty?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: The third count is an arson count that took place on or about May 21, 2001, in Seattle, involving the University of Washington.

What is your plea to that charge; guilty or not guilty?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: The fourth count is using a destructive device during a crime of violence. That happened on or about May 21, 2001, involving the same, at the University of Washington.

What is your plea to that; guilty or not guilty?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: Now, you are pleading guilty to these charges because you are satisfied in your own mind that you are guilty of these offenses?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Again, nobody forced you, threatened you, ordered you to come in here and plead guilty to something you didn't do?

THE DEFENDANT: No, Your Honor.

THE COURT: You are pleading guilty to these charges because you feel that's the truth of the matter, and you feel this is the best way to resolve the matter against yourself?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Since you've entered pleas of guilty to these charges, I want to review with you once again your rights.

As I have indicated to you, even though this matter is coming by way of an Information, you can still enter a plea of not guilty to that Information. Take the matter to trial.

Put the Government to the test of satisfying all those elements of the offenses and doing so beyond a reasonable doubt. Have the matter go before a jury to make that determination, as you are presumed innocent and you have no burden to carry in this matter. You have a right to confront and cross-examine all witnesses that may be brought against you, as well as compel or subpoena witnesses to appear on your own behalf.

As a Defendant, you do not have to testify as I have indicated. You have no burden to carry. It is up to the Government to, without any help from you, to satisfy these elements and do so beyond a reasonable doubt. If you choose not to testify, that's not to be used against you.

If you stand convicted, you have a right to appeal to a higher court for that court to determine whether things were handled correctly at this level.

Those rights you normally waive, with the exception of counsel, when you plead guilty. When you plead guilty, really the only thing left is for the Court to determine the sentence, and that is where you are now.

THE DEFENDANT: Correct, Your Honor.

THE COURT: So understanding that, you would still like for me to accept your plea of guilty to the charges?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Mr. Martin, any reason you

can think of why I shouldn't accept the pleas?

MR. MARTIN:  None, Your Honor.

THE COURT:  Then the record will reflect I will accept your pleas of guilty to the charges as indicated.  Make a finding that you are competent to enter the pleas; that is, that you have a full understanding of the charges against you and the ramifications of those charges.  That you are entering those pleas freely and voluntarily with that understanding.

The Court will make a further finding that you did in fact commit these offenses.

With that, I will set a date for sentencing.  That will be the day that I will set to see you back here.  I will order out a presentence report in that regard.  You will receive a copy.  You and Mr. Martin will get a chance to go through it.  If anything should appear that needs addressing or a hearing, those matters will be set up so those can be done as we approach the sentencing date.

Mr. Del Toro is representing Probation.

PROBATION OFFICER:  Yes, Your Honor.

THE COURT:  All right.  I will ask you before you leave, Ms. Kolar, to check in there and start this process.

I believe you've been processed through the Marshals?

MR. MARTIN:  We will take care of that immediately after court, Your Honor.

THE COURT:  Mr. Martin, I will leave that to you to

see that that is done.

Rhonda, we need a date.

THE CLERK:  January 5, 2007 at 9 a.m.

THE COURT:  January 5, 2007 at 9 a.m. will be the date for sentencing.  I am signing now an order as to the procedures we will use as we work towards that date.

I have received and reviewed a Pretrial Services report on this matter.  I don't believe there are any issues around that; is that correct?

MR. FRIEDMAN:  No, Your Honor, we agree with the Pretrial Services report.

THE COURT:  Then the Court will adopt the Pretrial Services report.

I am also looking at an appearance bond, Ms. Kolar, that you've signed, which indicates to me that you've read the conditions set forth in the bond.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Any need to review those?

THE DEFENDANT:  No, Your Honor.

THE COURT:  With the understanding that you read them and you will abide by them, I will sign this appearance bond, and you will be released on these conditions.

Anything else?

MR. MARTIN:  One second, Your Honor.

(Discussion held off the record.)

MR. MARTIN: Two matters, Your Honor, or one that Mr. Friedman will take up, and if we could have a short side-bar with the Court after her release is done, I appreciate it.

MR. FRIEDMAN: The matter that I was going to address, Your Honor, we'd ask that the plea agreement be filed under seal in the case.

MR. MARTIN: We have no objection.

THE COURT: All right. Is that the issue?

MR. MARTIN: Just one other short one, if we could approach.

THE COURT: All right.

(Discussion held off the record.)

THE COURT: Anything else?

MR. MARTIN: Nothing, Your Honor.

THE COURT: All right. Then I will have you, Ms. Kolar, if you would check with Probation and, Mr. Martin, take her through the Marshal's Office.

We are at recess.

THE CLERK: All rise. This court is at recess.

(Proceedings concluded.)

*   *   *   *   *
C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/S/  Teri Hendrix                    December 20, 2006
Teri Hendrix, Court Reporter              Date